UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEFFREY B. DUNN,

    Plaintiff,

v.                                      Case No.  5:18-cv-12-TKW/MJF

RICHARDS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jeffrey Dunn, a prisoner proceeding *pro se*, filed this section 1983 action alleging that prison personnel used excessive force. (Doc. 1). Defendants move to dismiss the complaint for failure to exhaust administrative remedies. (Docs. 48, 49). The undersigned recommends that the district court grant this motion.[1]

**I.    Background**

In his section 1983 complaint, Plaintiff names as defendants four prison officials of the Gulf Correctional Institution—Officer Mertz, Sergeant Hires, Sergeant Richards, and Captain Stephens.[2] Plaintiff claims that Defendants violated

---

[1] This case was referred to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

[2] Defendant Richards was incorrectly identified as "Richardson" in Plaintiff's complaint.

his constitutional rights by using excessive force on him. Specifically, Plaintiff claims that while Mertz, Hires, and Richards were escorting Plaintiff to medical personnel they instructed Plaintiff to walk and yelled when he failed to do so. (Doc. 1 at 5). Plaintiff claims that he was unable to walk and that Mertz then punched Plaintiff while he was handcuffed.

Sergeant Hires and Sergeant Richards purportedly "but dunked [sic] claimant on his shoulder and head on the concert [sic] floor causing instant pain." (*Id.*). Defendants then allegedly stomped on Plaintiff's side and "private area." (*Id.*) Approximately five minutes later, Captain Stephens slapped Plaintiff, and Mertz sprayed a chemical agent on Plaintiff and "kneed" him. (*Id.*). Plaintiff alleges that he suffered permanent injuries (including scars on his face and arms), a broken rib, and a dislocated shoulder. Plaintiff seeks $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages. *Id.*

## II.     Discussion

Defendants argue that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies. (Docs. 48, 49).

### A.     The PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a Section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24

(11th Cir. 1998). This exhaustion requirement applies to all inmate suits concerning claims that prison employees used excessive force. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002). Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25, 122 S. Ct. at 988 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91, 126 S. Ct. at 2386; *see Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself."). "The level of detail necessary in a grievance to comply with the grievance

procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218, 127 S. Ct. at 922.

    **B.**    <u>**The FDC's Administrative Grievance Procedure**</u>

To fully exhaust his administrative remedies, the FDC's grievance procedure requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Appeals and direct grievances to the Office of the Secretary are processed through the institution. Fla. Admin. Code r. 33-103.007(5). Each institution has a designated office through which grievances and appeals are processed. (*Id.*). That designated office has a logging and tracking system that records and documents the receipt and mailing of inmate grievances and appeals. (*Id.*).

    **C.**    <u>**Procedure for Adjudicating a Defendant's Motion to Dismiss for Plaintiff's Failure to Exhaust Administrative Remedies**</u>

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216, 127 S. Ct. at 922.

Adjudicating a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court looks to the factual allegations in the defendant's motion and those in the plaintiff's response. *Id.* If the respective assertions conflict, the court presume that the plaintiff's version is true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008).

If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

**D.    Application of the *Turner* Procedure**

      *1.    Plaintiff failed to Exhaust his Administrative Remedies*

Defendants assert that Plaintiff failed to complete the grievance process by filing any grievance appeal to the Office of the Secretary of the FDC. (Docs. 48-1, 49-1). Defendants support their allegation with a declaration from Ashley Stokes—the custodian of all grievance appeals made by inmates of the FDC—which states

that she has "reviewed FDC's grievance appeal system and determined that Inmate Jeffrey B. Dunn, did not file any grievance appeal alleging excessive use of force on July 3, 2016, pursuant to chapter 33-102, Florida Administrative Code." (Doc. 48-1 at 1-2; Doc. 49-1 at 1-2).

Plaintiff did not dispute this. According to Plaintiff, he filed two grievances:

(1) a formal grievance placed in the grievance box sometime between September 3, 2016 and October 3, 2016;

(2) a formal grievance placed in the grievance box on October 10, 2016. (Doc. 1 at 6-7).

Plaintiff does not explicitly identify the date that he filed his first formal grievance. But he noted that on October 3, 2016, he told Warden Blackwood to check a camera that would show that he submitted a grievance to the grievance box, and he stated that the prison cameras preserve video footage only for 30 days. (Doc. 1 at 6). According to Plaintiff's allegations, therefore, he filed his first formal grievance between September 3 and October 3, 2016.

Plaintiff states that in his October 3, 2016 conversation with Warden Blackwood, he also asked the Warden about his grievance in which he complained about the excessive use of force and the refusal of medical personnel to see Plaintiff. (Doc. 1 at 6). Plaintiff states in his complaint that medical personnel refused to see him in August and September 2016. *Id.* Thus, any grievance filed by Plaintiff in

which he complained about medical personnel refusing to see Plaintiff in August and September 2016—which included his complaint about the alleged excessive use of force—necessarily was filed after medical personnel refused to see Plaintiff in August and September 2016.

Insofar as Plaintiff alleges that Defendants used excessive force on him on July 3, 2016, any grievances filed by Plaintiff in September or October 2016 necessarily were filed more than 50 days after the alleged use of excessive force. Thus, any such grievances were untimely because the relevant portion of the Florida Administrative Code requires informal grievances to be filed within 20 days of the incident being grieved, and requires formal grievances to be filed within 15 days of an incident if an informal grievance was not filed.[3] *See* Fla. Admin. Code r. 33-103.11(1)(a)-(b). Thus, Plaintiff was required to file by July 19, 2016, any formal grievance regarding conduct that occurred on July 3, 2016.[4]

---

[3] Plaintiff does not allege that he filed any informal grievances. Instead, Plaintiff states that his second grievance was "another formal grievance per chapter 33-103.006 F.A.C" indicating that his first grievance was also a formal grievance. (Doc. 1 at 6) (emphasis added). Even if Plaintiff's first grievance was informal, it was untimely because the Florida Administrative Code requires an informal grievance to be received within 20 days of when the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(a). It is undisputed that any grievance filed by Plaintiff was filed more than 50 days after the alleged use of excessive force.

[4] The Florida Administrative Code provides guidance on calculating time frames for exhaustion under the PLRA. It states "[w]hen determining the time frames for grievances in all cases, the specified time frame shall commence on the day following the date of the incident or response to the grievance at the previous level.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91, 126 S. Ct. at 2386. An "untimely or otherwise procedurally defective" grievance will not properly exhaust administrative remedies. *Id.* at 83, 126 S. Ct. at 2382; *see also Goebert v. Lee Cty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) ("The Supreme Court has interpreted 'exhausted' to mean properly exhausted, and an untimely appeal would not properly exhaust remedies." (citing *Woodford*, 548 U.S. at 83-84, 126 S. Ct. at 2386)). Accordingly, in light of Plaintiff's untimeliness, he did not exhaust his administrative remedies.

### 2. *Plaintiff's Allegation that the FDC's Remedies Were Unavailable to Him*

Plaintiff asserts that any failure to file a grievance timely should be excused because he was unable to file grievances due to Lieutenant Bryant and Defendants' conduct and threats. (Doc. 53 at 2).

The PLRA excuses a failure to exhaust administrative remedies when the conduct of prison officials makes such remedies unavailable to an inmate. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The PLRA's exhaustion requirement hinges on the availability of administrative remedies. *Id.* In other words, "a remedy has to

---

For example, if an incident occurred on December 1, fifteen days from that date would be December 16." Fla. Admin. Code r. 33-103.011.

be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert*, 510 F.3d at 1322-23); *see Ross*, 136 S. Ct. at 1858-59. Therefore, "a prisoner is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (citing *Booth*, 532 U.S. at 738, 121 S. Ct. 1819); *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017). In *Ross*, the Supreme Court recognized three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. 136 S. Ct. at 1859; *Pavao*, 679 F. App'x at 823.

First, a remedy is unavailable when "it operates as a simple dead end" because prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Pavao*, 679 F. App'x at 823 (citing *Ross*, 136 S. Ct. at 1859); *Turner*, 541 F.3d at 1083 (noting that the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones").

Second, a remedy is unavailable if the grievance process is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. This occurs when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* In other words, "[r]emedies that rational inmates cannot

be expected to use are not capable of accomplishing their purposes and so are not available." *Pavao*, 679 F. App'x at 823 (citing *Turner*, 541 F.3d at 1084).

Finally, an administrative remedy is unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 135 S. Ct. at 1859.

Plaintiff alleges both that he filed grievances which prison officials discarded and that he did not file grievances because "they" threatened to harm Plaintiff if he filed grievances. (Doc. 53 at 2). In his complaint, Plaintiff stated: "On October 24, 2016, Administrative Lt. Bryant called Claimant into an office and threaten him, that if he kept making waves he would bury my ass. And to stop writing frivolous grievances. He then sherdded [sic] claimants [sic] grievance." (Doc. 1 at 6).

At step one of the exhaustion analysis, if there is any dispute as to whether prison officials denied an inmate access to administrative remedies, a court must presume that the inmate's version of events is true. *Turner*, 541 F.3d at 1082. Here, under Plaintiff's version of events, prison officials did not deny him access to administrative remedies until October 24, 2016, which is well after his deadline to file timely a formal or informal grievance for conduct that occurred on July 3, 2016. A prison official's "serious threats of substantial retaliation" negate the exhaustion requirement only "as to the affected parts of the process," not for periods prior to any threats. *Turner*, 541 F.3d at 1085. Plaintiff does not allege that prison officials

prevented him from filing grievances during the period in which a grievance would have been timely: between July 3, 2019 and July 19, 2016 (in the case of a formal grievance), or July 24, 2016 (in the case of an informal grievance).

Accordingly, because Plaintiff did not exhaust the available administrative remedies within the period required by the relevant Florida regulations, the PLRA requires that the district court dismiss this civil action.

### III. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendants' respective motions to dismiss (Docs. 48, 49) be **GRANTED**, and that Plaintiff's claims against Defendants Hires, Mertz, Stephens, and Richards be **DISMISSED** with prejudice for failure to exhaust administrative remedies.

2. The clerk of the court be directed to close this case file.

At Panama City, Florida, this 31st day of December, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**